UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DIAHANN GRASTY, | ) | |
| | ) | |
| Plaintiff, | ) | 12 C 9141 & 13 C 2522 |
| | ) | (consolidated) |
| vs. | ) | |
| | ) | Judge Feinerman |
| CAMBRIDGE INTEGRATED SERVICES GROUP, | ) | |
| INC., SEDGWICK CLAIMS MANAGEMENT | ) | |
| SERVICES, INC., and LAWRENCE M. ADELMAN, | ) | |
| in his capacity as trustee/assignee, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Diahann Grasty filed the consolidated suits against her former employer, Cambridge

Integrated Services Group, Inc.; Cambridge's successor, Sedgwick Claims Management

Services, Inc.; and Lawrence M. Adelman, the trustee to whom Cambridge assigned its

remaining assets after selling its business to Sedgwick.  The consolidated complaint purports to

state a hostile work environment claim against Cambridge under Title VII of the Civil Rights Act

of 1964, 42 U.S.C. § 2000e *et seq*., a Title VII successor liability claim against Sedgwick, and a

claim for declaratory and injunctive relief against Adelman concerning Grasty's pending

workers' compensation claim.  Doc. 42 (all record citations are to the docket in 13 C 2522).

These suits have had a long and tangled procedural history—involving, among other things, a

transfer between districts, reassignments among judges of this District, dismissals, and

reinstatements—the details of which are immaterial here.

As matters now stand, Cambridge and Sedgwick have moved to dismiss the claims

against them under Federal Rule of Civil Procedure 12(b)(6), Docs. 48, 50, and Adelman has

moved to dismiss the claim against him under Rule 12(b)(1) for lack of ripeness, Doc. 52.  For

the following reasons: (1) Cambridge's motion is denied; (2) Sedgwick's motion is denied; and (3) the claim against Adelman is severed under Rule 21, a new case is opened to encompass that claim, and Adelman's motion to dismiss on ripeness grounds is denied without prejudice to renewal if subject matter jurisdiction is found to otherwise lie over the new case.

## Background

Adelman's Rule 12(b)(1) motion accepts as true the facts alleged in the complaint, Doc. 52 at 3-5, so his challenge to subject matter jurisdiction is facial rather than factual. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009). On a facial challenge to subject matter jurisdiction, as on a Rule 12(b)(6) motion to dismiss, the court must accept as true the complaint's well-pleaded factual allegations, with all reasonable inferences drawn in the plaintiff's favor, but not its legal conclusions. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012); *Apex Digital*, 572 F.3d at 443-44; *Patel v. City of Chicago*, 383 F.3d 569, 572 (7th Cir. 2004). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Grasty's brief opposing dismissal, so long as those facts "are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The facts are set forth as favorably to Grasty as permitted by these materials. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012).

In October 2008, Grasty began working for Cambridge as a customer service agent in a call center. Doc. 42 at ¶ 7. Grasty let it be known that she is Buddhist. *Id.* at ¶ 9. Her co-workers, most of whom were Christians, began harassing her with comments like "This is the Lord's building," "You are the devil," and "We don't want you here." *Id.* at ¶¶ 11-12. Grasty reported the harassment to her supervisors, one of whom recommended that she seek other

employment and some of whom joined in the harassment. *Id*. at ¶¶ 14-24. On one occasion, a female coworker pushed Grasty into a locker because of her religion. *Id*. at ¶ 25. The manager to whom Grasty complained asked the co-worker to apologize but did not discipline or reprimand her. *Id*. at ¶ 26. As a result of the harassment, Grasty experienced severe stress, anxiety and pain, and was diagnosed with more than one mild heart attack or anxiety attack. *Id*. at ¶¶ 27-28.

On November 28, 2010, one of Grasty's co-workers struck Grasty on the head because she was angry that a Buddhist had won an office lottery. *Id*. at ¶ 30. Grasty reported the incident to her supervisor, who told her to report it to a manager. *Id*. at ¶ 33. The assailant apologized, but Grasty told her manager that she was concerned about her personal safety. *Id.* at ¶ 39. When Grasty told her supervisor that she wanted to work in a safe environment and was still experiencing pain from the attack, the supervisor asked if she wanted the entire call center fired. *Id*. at ¶¶ 41-42. Grasty saw a doctor in December 2010 about the pain she was suffering due to that attack, and the doctor excused Grasty from work for several weeks. *Id*. at ¶¶ 44-45. Grasty filed a workers' compensation claim, which remains pending before the Illinois Workers' Compensation Commission ("IWCC"). *Id*. at ¶¶ 46-47.

On December 22, 2010, Grasty called the Equal Employment Opportunity Commission ("EEOC") to ask about filing a religious discrimination charge against Cambridge. Doc. 60-1 at 2 (¶ 1), 5. The EEOC assigned transaction number 101222-000333 to the call. *Id*. at 2 (¶ 2), 5. The EEOC sent Grasty a blank intake questionnaire, which she completed and mailed to the EEOC's Chicago District Office on or about January 1, 2011. *Id*. at 2 (¶¶ 2-3), 5, 7-10; Doc. 42 at ¶ 48; Doc. 42-1 at 4-7. The questionnaire set forth her name and the name and address of her employer (Cambridge); indicated that the basis for her claim was religious discrimination;

provided substantial detail about the alleged events underlying the claim; identified witnesses to those alleged events; stated her intent to file a charge of discrimination; and authorized the EEOC to look into her claims. Doc. 60-1 at 2 (¶ 4), 7-10. Shortly after thirty days had passed, Grasty called the EEOC for an update, and an EEOC employee told her that the EEOC had received the questionnaire and would contact her in the future. *Id*. at 2 (¶ 5). Shortly after that conversation, Grasty received a letter from the EEOC regarding the matter, though she cannot locate it now. *Id*. at 2 (¶ 6).

More than two years later, on August 15, 2013, Grasty visited the EEOC's Chicago District Office. *Id*. at 3 (¶ 7). An EEOC employee told her that the Chicago District Office has assigned Charge No. 846-2011-22173 to her charge of discrimination and that the charge had been dismissed on April 11, 2011. *Ibid*. Grasty's court-recruited attorney then contacted the Chicago District Office to request a right-to-sue letter, and the EEOC refused. *Id*. at 2 (¶¶ 8-9), 20-38. According to the EEOC, its records showed that Grasty called the EEOC on December 27, 2010; that the call was assigned Inquiry Number 846-2011-22173; that the inquiry was closed on April 3, 2011, because the EEOC had not received any written documentation from Grasty by that date; that "a search of all our records does not show receipt of any documentation prior to October 25, 2013 that can be considered a timely filing of a charge of discrimination under our laws"; and that, as a result, the EEOC would not re-open the inquiry. *Id*. at 32.

In the meantime, on or about May 31, 2011, Cambridge sold its business operations to Sedgwick and terminated Grasty's employment. Doc. 42 at ¶ 49. In September 2011, Cambridge assigned its remaining assets to Adelman as trustee under an Assignment for the Benefit of Creditors. *Id*. at ¶ 50. As trustee, Adelman assumed the duty of disposing of Cambridge's remaining assets. *Id*. at ¶ 51. Grasty filed a proof of claim with Adelman

pertaining to her pending workers' compensation claim. *Id*. at ¶ 52; Doc. 60-1 at 40. On her proof of claim, Grasty attested that she was entitled to $1,248,000 of workers' compensation benefits for total disability. Doc. 62-1 at 2. The IWCC has not yet resolved Grasty's workers' compensation claim, and she has not received any workers' compensation benefits or any disbursements from Adelman. Doc. 42 at ¶¶ 47, 53.

In January 2013, Adelman sent a letter to Cambridge's creditors, including Grasty, reporting on the status of the Assignment for the Benefit of Creditors; the letter noted that an initial distribution was forthcoming and stated that "[i]n budgeting for the initial distribution, we have reserved funds for the unresolved litigation cases and claims, as well as anticipated future priority and administrative claims for expenses incurred over the remaining life of the trust." Doc. 60-1 at 42. Nonetheless, Adelman does not intend to disburse any funds to Grasty or to hold any funds in reserve in the event the IWCC awards her workers' compensation benefits. Doc. 42 at ¶ 54. On December 14, 2011, Adelman rejected (rather than held in abeyance) Grasty's claim. Doc. 62-1 at 12. Grasty does not challenge in this case the IWCC's handling of her workers' compensation action. Doc. 42 at ¶ 47 n.5.

## Discussion

### I.    Cambridge

Cambridge argues that Grasty's Title VII claim should be dismissed because she did not exhaust her administrative remedies before filing suit. Doc. 50 at 7-13. This is so, Cambridge contends, for two reasons: (1) Grasty never filed an administrative charge with the EEOC; and (2) the EEOC never issued Grasty a right-to-sue letter. Neither ground justifies dismissal under Rule 12(b)(6).

Title VII makes it "an unlawful employment practice for an employer … to … discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C.§ 2000e-2(a)(1).  "In Title VII cases, the scope of the complaint brought before the administrative agency limits the scope of subsequent civil proceedings in federal court; in other words, plaintiffs may pursue only those claims that could reasonably be expected to grow out of the administrative charges."  *Reynolds v. Tangherlini*, 737 F.3d 1093, 1099-1100 (7th Cir. 2013); *see also Miller v. Am. Airlines, Inc.*, 525 F.3d 520, 525 (7th Cir. 2008); *Cheek v. W. and S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994).  If the EEOC declines to pursue the charge on its own, it issues a right-to-sue letter and the complainant can proceed to federal court. *See Hill v. Potter*, 352 F.3d 1142, 1145 (7th Cir. 2003).  "Although the charge-filing requirement is not jurisdictional, filing an EEOC charge and receiving a right-to-sue letter still is a prerequisite to suit unless the claimant's failure to receive a right-to-sue letter is attributable to EEOC error."  *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 128-29 (7th Cir. 1989).

Grasty concedes that she did not file a formal administrative charge with the EEOC, but argues that her intake questionnaire should be treated as the equivalent of a charge.  Doc. 60 at 7. In *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008), the Supreme Court held that an intake questionnaire can qualify as a formal charge in some circumstances.  The Court ruled that the plaintiff's questionnaire there sufficed because it explained the basis for his claim and asked the EEOC to take action.  *Id*. at 401-05.  Citing *Holowecki*, the Seventh Circuit has held that "a document may be a 'charge' even if it lacks an appropriate caption and charging language," and even went so far as to say that "[a] piece of paper that alleges discrimination and asks the agency

to take remedial action suffices." *EEOC v. Watkins Motor Lines, Inc.*, 553 F.3d 593, 597-98 (7th Cir. 2009).

Grasty's intake questionnaire easily qualifies as an administrative charge under that standard. As noted above, the questionnaire identifies Cambridge as Grasty's employer, alleges that she was the victim of religious discrimination, details the events underlying her claim, identifies witnesses, states her intent to file a charge of discrimination, and authorizes the EEOC to look into her claims. Doc. 42-1 at 4-7. The last page of the questionnaire provides the icing on the cake, stating that "[c]onsistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge." *Id*. at 7; see 29 C.F.R. § 1601.12(b) ("[A] charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of."). The undersigned has handled dozens of Title VII claim over the past four years, and Grasty's questionnaire includes far more detail about her claim than do most formal administrative charges. The court therefore cannot agree with Cambridge that Grasty's failure to submit a formal administrative charge means that she failed to exhaust her administrative remedies. *See Philbin v. Gen. Electric Capital Auto Lease, Inc.*, 929 F.2d 321, 324 (7th Cir. 1991) (per curium) (treating a Title VII intake questionnaire as a charge where the plaintiff indicated a desire to file a charge and "the information contained in the questionnaire was sufficient to meet the requirements for a charge"); *Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534, 542-44 (7th Cir. 1988) (holding that an intake questionnaire sufficed where it named the plaintiff's former employer as the respondent and explained the allegedly discriminatory demotion); *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1321 (11th Cir. 2001) (holding that a verified intake questionnaire listing the basic information called for by 29 C.F.R.

§ 1601.12(a) can be treated as a Title VII charge where a reasonable person would conclude that the charging party manifested her intent to activate the administrative process by filing the intake questionnaire); *Clark v. Coats & Clark, Inc.*, 865 F.2d 1237, 1240-41 (11th Cir. 1989) (treating an intake questionnaire as a charge where it described the alleged discrimination and identified the defendant as the employer); *Waiters v. Robert Bosch Corp.*, 683 F.2d 89, 92 (4th Cir. 1982) (treating an affidavit as a Title VII charge where it "identified the parties, the nature of the discrimination, the date of the discriminatory act and the circumstances supporting the charge"); *Martin v. F.E. Moran Inc.*, 2014 WL 5421021, \*3 (N.D. Ill. Oct. 24, 2014) (treating an intake questionnaire as a charge for purposes of Title VII where it provided detail sufficient to notify the EEOC of the plaintiff's claim).

The second possible obstacle to exhaustion pressed by Cambridge is that the EEOC has not sent Grasty a right-to-sue letter. This circumstance ordinarily bars a plaintiff from bringing a Title VII suit in court. *See Conner v. Ill. Dep't of Natural Res.*, 413 F.3d 675, 680 (7th Cir. 2005). As noted above, however, the Seventh Circuit has recognized an exception where "the claimant's failure to receive a right-to-sue letter is attributable to EEOC error." *Schnellbaecher*, 887 F.2d at 129. Viewing the Rule 12(b)(6) materials in the light most favorable to Grasty, that is precisely what happened here—after Grasty called the EEOC, mailed her completed intake questionnaire to the EEOC, was told by an EEOC employee that the agency had received the questionnaire and would contact her in the future, and received a letter from the EEOC regarding her claim, the EEOC never contacted Grasty and mistakenly closed her case on the ground that *she* had not contacted *it*. On that set of facts, which may or may not turn out to be true once evidence is adduced, Grasty did not receive a right-to-sue letter because of EEOC error, and her suit accordingly is not barred at the Rule 12(b)(6) stage for failure to exhaust. *See also Hiller v.*

*Okla. ex rel. Used Motor Vehicle and Parts Comm'n*, 327 F.3d 1247, 1252 (10th Cir. 2003);

*Fouche v. Jekyll Island-State Park Auth.*, 713 F.2d 1518, 1526, 1526 n.11 (11th Cir. 1983)

(collecting cases); *Hill v. Vill. of Franklin Park*, 2008 WL 686256, \*5 (N.D. Ill. Mar. 11, 2008)

("Because the EEOC's failure to issue a right-to-sue letter is beyond [Plaintiff's] control, it

would be inequitable to dismiss her complaint on these grounds."); *Sherman v. Standard Rate*

*Data Serv., Inc.*, 709 F. Supp. 1433, 1437 (N.D. Ill. 1989) (holding that a court should not

dismiss for failure to exhaust "when the EEOC or Attorney General has incorrectly refused to

issue a right to sue letter"); *cf. Begolli v. Home Depot, U.S.A., Inc.*, 701 F.3d 1158, 1160 (7th Cir.

2012) ("[I]n a case in which a party is entitled to, and demands, a jury trial, defenses are tried to

the jury along with the case in chief.").

   In so holding, the court acknowledges Cambridge's citation to the EEOC's response to

Sedgwick's Freedom of Information Act ("FOIA") request.  Doc. 63 at 3 n.1.  (Sedgwick relies

on the same document.  Doc. 48-1 at 12-13.)  In that response, the EEOC states that it never

received Grasty's intake questionnaire:

> According to our agency database, it appears that Ms. Grasty's inquiry on
> December 24, 2010 generated an EEOC number **846**-2011-22173N when she
> contacted the 1-800 phone number, spoke to someone and they mailed her an
> intake questionnaire, hence the **846** EEOC number.  The intake questionnaire
> was not received in the Chicago District Office and a Notice of Right to Sue
> was not issued since a charge of discrimination was not generated.  The
> inquiry was automatically closed in our database after 90 days.

Doc. 48-2 at 3.  Because Cambridge is the moving party, it may not rely on the EEOC's FOIA

response on a Rule 12(b)(6) motion.  *See Geinosky*, 675 F.3d at 745 n.1 ("A motion under Rule

12(b)(6) can be based only on the complaint itself, documents attached to the complaint,

documents that are critical to the complaint and referred to in it, and information that is subject to

proper judicial notice.  If a moving party relies on additional materials, the motion must be

converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d).") (internal citations omitted).

Cambridge could have relied on the EEOC's FOIA response if it were subject to judicial notice, but the response—insofar as it is used for the truth of the EEOC's statement that it did not receive Grasty's intake questionnaire—is not properly subject to judicial notice. Federal Rule of Evidence 201 provides in relevant part that the court may take judicial notice of a fact only if it "is not subject to reasonable dispute because it … (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354 (7th Cir. 1995) ("In order for a fact to be judicially noticed, indisputability is a prerequisite."). The EEOC's statement is subject to reasonable dispute; its recordkeeping practices, like those of any large organization, are by their very nature not free of error, and Grasty avers not only that she mailed the questionnaire to the agency's Chicago District Office, but also that an EEOC employee told her that the EEOC had received it. Accordingly, while the EEOC's FOIA response may be admissible on summary judgment or at trial under Rule 803(7), the court may not take judicial notice of the document at the Rule 12(b)(6) stage under Rule 201. *See Doss v. Clearwater Title Co.*, 551 F.3d 634, 640 (7th Cir. 2008) ("It takes more than an exception to the hearsay rule … to justify judicial notice."); *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1083 (7th Cir. 1997) ("If a court takes judicial notice of a fact whose application is in dispute, the court … raises doubt as to whether the parties received a fair hearing.").

Because Grasty's claim is not barred for failure to exhaust, Cambridge's motion to dismiss is denied.

## II.      Sedgwick

Like Cambridge, Sedgwick moves to dismiss Grasty's claim against it on the ground that she did not exhaust her administrative remedies.  Doc. 48-1 at 9-15.  That argument is rejected for the reasons set forth above.

Sedgwick argues in the alternative that the complaint does not state a viable successor liability claim.  *Id*. at 3-9.  Successor liability is an equitable doctrine that "provides an exception from the general rule that a purchaser of assets does not acquire a seller's liabilities."  *Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Tasemkin, Inc.*, 59 F.3d 48, 49 (7th Cir. 1995).  Whether liability should be imposed on an asset purchaser depends on three factors: "(1) whether the successor employer had prior notice of the claim against the predecessor; (2) whether the predecessor is able, or was able prior to the purchase, to provide the relief requested; and (3) whether there has been a sufficient continuity in the business operations of the predecessor and successor."  *Wheeler v. Snyder Buick, Inc.*, 794 F.2d 1228, 1236 (7th Cir. 1986); *see Teed v. Thomas & Betts Power Solutions, LLC*, 711 F.3d 763, 765-66 (7th Cir. 2013) (explaining the impact of each factor).  Viewing the facts as the court must on a Rule 12(b)(6) motion, the complaint states a plausible successor liability claim.

As for the first *Wheeler* factor, Grasty reported several incidents of harassment and discrimination, which resulted in meetings with managers and co-workers.  Doc. 42 at ¶¶ 14, 17, 19, 26, 33, 35-36, 41.  Sedgwick purchased Cambridge's business operations within three years of Grasty's hiring and approximately six months after she was struck in the head by a co-worker and reported lingering pain and fear to a supervisor.  And when Sedgwick assumed Cambridge's business operations, it "hired the same employees and supervisors" with whom Grasty had worked.  *Id*. at ¶ 67.  Given the temporal proximity between Sedgwick's purchase of

11

Cambridge's assets and the workplace tumult arising from the alleged mistreatment of Grasty, as well as the continuity of personnel, it is plausible that Sedgwick was aware of Grasty's allegations of religious discrimination and harassment when it purchased Cambridge's assets.

The second *Wheeler* factor directs the court to consider whether Cambridge is able, or was able prior to the sale to Sedgwick, to provide Grasty's requested relief. This inquiry assists the court in assessing "whether [successor] liability would strike a reasonable balance between the interest in fully sanctioning unlawful conduct and the interest in facilitating the market in corporate and other productive assets." *EEOC v. Vucitech*, 842 F.2d 936, 946 (7th Cir. 1988). Grasty seeks the same relief from Cambridge as from Sedgwick. Doc. 42 at ¶¶ 62, 68. The complaint alleges that Cambridge was capable of providing that relief prior to Sedgwick's asset purchase and that Sedgwick is able to do so now. *Id.* at ¶¶ 65-66. After the sale to Sedgwick, Cambridge's remaining assets were entrusted to Adelman, *id.* at ¶ 6, and it is unclear from the pleadings whether those assets are enough to cover any Title VII relief granted to Grasty in this case.

Sedgwick contends that successor liability is unavailable because Cambridge can provide partial relief. Doc. 48-1 at 6. But successor liability remains possible even if the predecessor can provide partial relief, as "the predecessor's ability to provide some relief prior to the transfer is [only] one factor to be considered in determining if successor liability should be imposed." *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 751 (7th Cir. 1985). The extent to which Cambridge could provide relief now or could have provided relief before the sale is unclear from the pleadings, and the weight appropriately given to this *Wheeler* factor in relation to the others cannot be ascertained at the Rule 12(b)(6) stage. Accordingly, even if the pleadings established

that Cambridge was or remains able to provide partial relief, that fact would not preclude successor liability against Sedgwick at the Rule 12(b)(6) stage.

The third *Wheeler* factor, continuity, is "an amalgamation of a number of indicia," including whether the successor uses the same facilities, employs substantially the same workforce and supervisory personnel, maintains the same jobs under substantially the same working conditions, utilizes the same equipment, and provides the same products or services as the predecessor did. *Wheeler*, 794 F.2d at 1236 n.7; *see also EEOC v. G-K-G, Inc.*, 39 F.3d 740, 748 (7th Cir. 1994). The complaint alleges that Sedgwick ran Cambridge's business operations, including the call center where Grasty worked, "in substantially the same manner as Cambridge had," using the same facilities, equipment, employees, and supervisors to provide the same type of customer service. Doc. 42 at ¶ 67. This alleges a sufficient continuity of business operations between Cambridge and Sedgwick to satisfy the third factor.

Because Grasty's complaint plausibly alleges that Sedgwick had notice of her allegations, that equity could require Sedgwick to provide relief to her, that there was a continuity of business operations between Cambridge and Sedgwick, it sufficiently pleads successor liability. Sedgwick's motion to dismiss therefore is denied.

## III.    Adelman

Grasty's claim against Adelman seeks (1) a declaration that Grasty has a right to receive distributions from Adelman in the event that the IWCC awards her workers' compensation benefits; and (2) an injunction preventing Adelman from distributing the remaining Cambridge funds "to the extent that any [such] distribution would preclude him from being able to make appropriate distributions to Ms. Grasty in the future." Doc. 42 at pp. 11-12. Adelman argues that this claim is not ripe because it depends on too many contingencies—whether the IWCC

will rule for Grasty on her workers' compensation claim, whether Cambridge's insurance policy will be able to cover any workers' compensation award, and whether Adelman cannot or will not use Cambridge's remaining assets to pay that claim. Doc. 52 at 9-11. The ripeness issue is difficult, and the court need not resolve it now because Grasty's claim against Adelman is severable under Rule 21 and, after severance, the claim likely will be dismissed on other grounds for lack of subject matter jurisdiction.

Rule 21 provides: "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. It is within the court's "broad discretion" to sever a claim as long as it is "discrete and separate" from another claim. *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000) (internal citations omitted) (approving severance of an indemnification claim from a primary liability claim); *see also Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 442-43 (7th Cir. 2006) (approving severance where "[t]he validity of the claims before us does not depend, as a matter of law, on the outcome of the severed claims"); *Hebel v. Ebersole*, 543 F.2d 14, 17 (7th Cir. 1976) (approving severance of "logically separable" claims). For severance to be appropriate, "one claim must be capable of resolution despite the outcome of the other claim." *Gaffney*, 451 F.3d at 442; *see also Turley v. Bedinger*, 542 F. App'x 531, 534 (7th Cir. 2013) (per curium).

Severance is appropriate here because the outcome of Grasty's claim against Adelman— which, as discussed, pertains only to the availability of assets to cover her pending workers' compensation claim—is wholly independent of the outcome of her Title VII claim against Cambridge and Sedgwick. Whether Cambridge violated Title VII and whether Sedgwick is liable for that alleged violation turn on facts and legal principles having nothing to do with the

14

facts and legal principles that will determine whether Adelman properly performed his duties

under Illinois law governing assignment for the benefit of creditors. Because the claim against

Adelman is "clearly independent" from the claims against Cambridge and Sedgwick, the claim

against Adelman will be severed under Rule 21. *See Gaffney*, 451 F.3d at 441-43; *Rice*, 209 F.3d

at 1016.

"When a federal civil action is severed, it is not dismissed. Instead, the clerk of court

creates multiple docket numbers for the action already on file, and the severed claims proceed as

if suits had been filed separately." *Lee v. Cook Cnty., Ill.*, 635 F.3d 969, 971 (7th Cir. 2011);

*Gaffney*, 451 F.3d at 441 ("Rule 21 severance creates two discrete, independent actions, which

then proceed as separate suits for the purpose of finality and appealability."). The court

accordingly will direct the Clerk to create a separate case and a separate docket number for

Grasty's claim against Adelman.

The case against Adelman likely will be dismissed for want of subject matter jurisdiction.

Grasty's claim against Adelman, which pertains solely to his duties as trustee under an

assignment for the benefit of creditors, arises under state law. *See First Bank v. Unique Marble

& Granite Corp.*, 938 N.E.2d 1154, 1158 & n.2 (Ill. App. 2010); *Black v. Palmer*, 145 N.E.2d

797, 799-800 (Ill. App. 1957); *In re Computer World Solutions, Inc.*, 479 B.R. 483, 486 (Bankr.

N.D. Ill. 2012). And it would appear that Grasty and Adelman are both Illinois citizens, Doc. 28

at ¶¶ 3, 6, though that is not entirely clear from the complaint. Accordingly, once the new case is

opened on the docket, Grasty and Adelman will be ordered to show cause why the case should

not be dismissed for lack of subject matter jurisdiction. *See In re Honeywell Int'l, Inc. v. Phillips

Petroleum Co.*, 415 F.3d 429, 431 (5th Cir. 2005) ("a severed action must have an independent

jurisdictional basis"). If the case is dismissed on that ground, Grasty of course will be entitled to

re-file her claim against Adelman in state court.  *See* 735 ILCS 5/13-217; *Davis v. Cook Cnty.*,

534 F.3d 650, 654 (7th Cir. 2008).

### Conclusion

For the foregoing reasons, Grasty's claim against Adelman is severed under Rule 21, the

Clerk is directed to open a new case for that claim, and Adelman's motion to dismiss is denied

without prejudice to renewal if it turns out that, contrary to the court's expectations, subject

matter jurisdiction otherwise lies over the case.  Sedgwick's and Cambridge's motions to dismiss

are denied, and both shall answer the consolidated complaint by November 24, 2014.

November 3, 2014                  _____

                                  United States District Judge